(No. 83-CC-1572–)

METHODIST MEDICAL CENTER (Peoria, Illinois), Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 31, 1986.*

WESTERVELT, JOHNSON, NICOLL & KELLER, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This cause coming on to be heard on the joint stipulation of the parties and due notice having been given and the Court being fully advised finds as follows:

Claimant hospital, a participant in the Medical Assistance Program (MAP) administered by the Illinois Department of Public Aid (IDPA), here seeks vendor payments, as provided in section 11—13 of the Illinois Public Aid Code, on six patient accounts. (Ill. Rev. Stat., ch. 23, par. 11—13.) IDPA's report, as filed herein, advises that it has paid, or accepts payment liability in appropriate amounts in respect to four of the six accounts. This opinion addresses the issue of whether Claimant is entitled to payment of the two remaining accounts for which IDPA denies liability.

The first account, that of patient Barnes, concerns inpatient services directly relating to hysterectomy surgery, rendered in November and December 1980, in Claimant's facility. By Federal regulation (42 C.F.R. 441.250 through 441.259) and State regulation (IDPA Rule 4.15), the State's MAP payment obligation for sterilization surgery—including hysterectomies—is contingent upon the medical vendor's compliance with certain conditions. One of these conditions is that the patient acknowledge, in writing, her understanding that the planned surgery will render her permanently incapable of bearing children; and, in the case of hysterectomy, that the physician certify, also in writing, the medical necessity of the planned surgery. Presurgery completion of the relevant document (an IDPA form designed for this purpose), required in order to comply with these conditions, is the joint responsibility of the physician and the hospital. This Court has previously so held; see *Good Samaritan Hospital v. State* (1982), 35 Ill. Ct. Cl. 379.

The Claimant's invoice of these services was disallowed by IDPA as being incomplete. The invoice

failed to report the patient's diagnosis, the fact that surgery had been performed, or the surgical procedure which was in fact performed. Each such item of information is required to be reported by the hospital in the invoice. Claimant had also failed to supply, with its invoice, the completed IDPA form to establish compliance with the above-referenced regulations. Claimant has offered no evidence that it submitted a corrected rebill-invoice to IDPA, properly documented with a completed hysterectomy acknowledgement form (DPA form 1977), within the one-year period prescribed by IDPA Rule 140.20 and by Federal regulation (42 C.F.R. 447.45(d)).

From IDPA's report, we note that the Federal government's continuing participation in the funding of Illinois' MAP program is dependent upon IDPA's regular enforcement of these regulatory requirements. Applicable here are the requirements that medical vendors must fully and correctly complete their invoice forms being submitted for IDPA's payment consideration, so as properly to identify the services being invoiced; in the case of hysterectomy surgeries, that they must document both the patient's awareness of the consequences of the planned surgery and the physician's certification of its necessity; and that correctly-prepared invoices be timely received by IDPA.

The second patient account relates to newborn-nursery care provided in June 1981, to patient Isaac Harris, a newborn child. Claimant had submitted one invoice to IDPA for the mother's obstetrical services, and, much later, tendered a second invoice, pertaining to the same dates of service, for the newborn care. IDPA reports that it had previously made full payment to

Claimant for both the mother's and the newborn's care, by paying the invoice which Claimant had submitted in the mother's name for the same dates of service.

The Department's conclusion is grounded in IDPA Rule 140.100(d), which provides:

"In obstetrical cases payment for services to both the mother and the newborn child shall be made at one per diem rate. Only in instances in which the medical condition of the newborn, as certified by the utilization review authority, necessitates care in other than the newborn nursery, shall payment be made in the child's name."

As explained in IDPA's *MAP Handbook for Hospitals*, all charges for the inpatient (per diem) services of both mother and newborn are considered to be incurred by the mother, for so long as both remain inpatients; and only one per diem charge is payable upon IDPA's receipt of the hospital's charges for such services involved in the mother's name.

The hospital may invoice newborn services separately, and expect them to be paid for by IDPA, only when the newborn's condition, properly certified, necessitates care provided in other than the newborn nursery (such as in a perinatal center) or when the newborn continues to require inpatient nursery care following the mother's discharge from the hospital. See IDPA's *MAP Handbook for Hospital*, II-H-17.

Here, Claimant's invoice establishes that the newborn received nursery care only, that no perinatal or other intensive care services were provided, and that the patient and his mother were discharged on the same day. IDPA was therefore correct in considering Claimant's invoice, naming the mother as patient, to represent all of Claimant's charges for both the mother and her newborn child. We find that, having paid that invoice, the State has fully discharged its MAP-payment obligation for both mother's and newborn's services.

Section 11—13 of the Public Aid Code (Ill. Rev. Stat., ch. 23, par. 11—13), provides that a vendor's right to a vendor payment may be "limited by regulations of the Illinois Department." The IDPA rules relevant here are such limiting regulations, as are the above-referenced Federal Medicaid regulations. Moreover, as IDPA notes in its report, Claimant and other participating hospitals have each signed provider agreements upon enrolling in the Department's MAP, in which they agree "to abide by the Department's properly promulgated Rules and Hospital Handbook" requirements, necessarily including IDPA Rules 4.15, 140.20 and 140.100, as well as the *Handbook*'s conditions, service-coverage limitations and invoice-preparation requirements. In summary, Claimant has contracted to abide by each of the regulatory and *Handbook* requirements as discussed above.

We conclude, as to the Barnes account, that Claimant failed to submit a properly prepared and documented invoice for its services within the time prescribed for IDPA's receipt thereof. The absence of required data on the invoice and the lack of a completed DPA form 1977 warranted IDPA's denial of payment on this account. We further conclude that Claimant had previously been paid in full on the Harris newborn's account.

It is therefore ordered that:

1. The Claimant be awarded the sum of $15,246.96, the liability for which IDPA has admitted;

2. The balance of this claim be, and hereby is, dismissed.