(No. 83-CC-2254—)

MEMORIAL MEDICAL CENTER, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 4, 1988.*

DONALD M. CRAVEN, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

Poch, J.

Respondent has moved for summary judgment on this vendor-payment claim, filed under the provisions of section 11—13 of the Public Aid Code (Ill. Rev. Stat. 1985, ch. 23, par. 11—13), on the ground that the documents submitted by Claimant, in support of its claim, fail to establish its compliance with applicable statutory law and related requirements. The Claimant having received due notice, the Court finds as follows:

Claimant hospital is seeking a vendor payment under the Medical Assistance Program (MAP) adminis-tered by the Illinois Department of Public Aid (IDPA). The questions presented for resolution are whether Claimant's services here related to an abortion per-

formed on its Medicaid-recipient patient, whether Claimant fully and accurately identified its medical services in invoicing them for IDPA's payment consideration, and whether Claimant had demonstrated its compliance with IDPA's requirements, as conditions precedent to its entitlement to payment for these services.

IDPA's report, the contents of which are *prima facie* evidence under Court Rule 14, advises that Claimant submitted a single invoice, without any attached document, for these March 1982 services. IDPA notes that the information supplied by Claimant is inconsistent, in that its entries on the IDPA invoice-form are contradictory in describing the services which Claimant rendered to its patient. Although one coded entry on the invoice represents that no surgery was performed during the patient's inpatient stay, Claimant's ancillary-service entries include charges for operating room, recovery room and anesthesiology; and its "accommodation" entries describe this as a surgical stay. As disclosed in its invoice, Claimant's services included surgical services, and contrary to IDPA's invoice-preparation requirements, Claimant failed to identify the surgical procedure which was performed on the patient. Compare IDPA's requirements for invoice-reporting of services rendered, as discussed in *Methodist Medical Center v. State* (1986), 38 Ill. Ct. Cl. 208, 209-10.

One of Claimant's invoice-entries identifies that surgery as an abortion, performed on Claimant's patient during the stay being invoiced. The invoiced charges were disallowed for payment by IDPA, on a voucher dated April 2, 1982. The voucher notified Claimant that the disallowance resulted from Claimant's failure to submit an abortion certification form with its invoice.

The significance of Claimant's abortion-code entry is found in certain prohibitions, in State and Federal law, against IDPA's payment for abortion-related services. Section 5—5 of the PAC excludes such services from those types of medical treatment for which IDPA was authorized to pay. As of March 1982, when Claimant rendered the services here at issue, the General Assembly had directed that payment was to be authorized for:

* * * any other medical care, * * *, but not including abortions, or induced miscarriages or premature births, unless, in the opinion of a physician, such procedures are necessary for the preservation of the life of the woman seeking such treatment, or except an induced premature birth intended to produce a live viable child and such procedure is necessary for the health of the mother or her unborn child. (Ill. Rev. Stat. 1985, ch. 23, par. 5—5.)

In assessing the payment-entitlement of an invoice submitted under any exception to the above prohibition, IDPA is to require:

* * * that a written statement including the required opinion of a physician shall accompany any claim for reimbursement for abortions, induced miscarriages or premature births. This statement shall indicate what procedures were used in providing such medical services. (*Ibid.*)

Respondent has no authority to make payment unless the vendor's invoice for abortion-related services is documented in accordance with the requirements of section 5—5.

The U.S. Congress enacted legislation which has a similar prohibitive effect upon Respondent's payment for abortions for Medicaid recipients. The so-called Hyde amendments deny Federal Medicaid matching funds ("Federal financial participation," or FFP) for the States' costs of paying medical vendors for performing abortions, except under specified circumstances. See generally *Harris v. McRae* (1980), 448 U.S. 297, 100 S. Ct. 2671, 65 L. Ed. 2d 784; and see *William v. Zbaraz* (1980), 448 U.S. 358, 100 S. Ct. 2694, 65 L. Ed. 2d 831,

involving a constitutional challenge of section 5—5 of Illinois' PAC. The Hyde amendment exceptions would require a physician's written certification as to the patient's medical condition, similar in content to that required under section 5—5.

The Federal physician-certification requirements appear in sections 441.203 and 441.206, of title 42, Code of Federal Regulations; and are further explained in IDPA Rule 140.413 (89 Ill. Admin. Code §140.413). A hospital can comply with these State and Federal requirements by insuring that its invoice, submitted to IDPA, is accompanied by an abortion payment application (DPA form 2390), a form in which the physician certifies in his or her professional judgment that the named recipient's life would be endangered if her fetus were carried to term.

As noted, Claimant hospital's invoice listed inconsistent entries, and was deficient in its failure to identify the surgical procedure performed. No explanatory documents accompanied it. If these services were related to abortion surgery, then Claimant could have submitted a correctly prepared, "rebill" invoice, entering the code for the specific abortion procedure which was performed on the patient, and attaching a certification form (DPA 2390) completed by her physician, describing the emergent circumstances which occasioned that particular procedure. If no abortion had been performed—and the initial invoice was incorrect in that respect, then Claimant's rebill-invoice could have corrected the erroneous entries and accurately identified the procedure which was in fact performed. In this case, however, Claimant failed to submit any rebill-invoice. IDPA reports receiving no rebill of these services, containing internally consistent entries and identifying the procedure which was performed. Claimant does not

allege that any such rebill was submitted, within the one-year period following the patient's stay, as required by subsection (d) of IDPA Rule 140.20, and by 42 CFR §447.45. *Good Samaritan Hospital v. State* (1982), 35 Ill. Ct. Cl. 379; *Rock Island Franciscan Hospital v. State,* 39 Ill. Ct. Cl. 100; and *Riverside Medical Center v. State* (1986), 39 Ill. Ct. Cl. 301.

Respondent has attempted, through discovery, to seek Claimant's production of its records, including any abortion certification or other documents identifying the surgical procedure and showing whether Claimant had complied with applicable IDPA rule requirements. Claimant answered by admitting each allegation in Respondent's request for admission of facts, thereby representing that Claimant has no relevant documents to produce, other than those submitted with its complaint.

The Court finds that it can make no vendor-payment award in this matter. If IDPA is to administer its program in accordance with applicable requirements, then vendors must be expected to identify the medical services for which they are charging, by completing and documenting IDPA's invoice-forms in accordance with those requirements. It is apparent that Claimant failed to do so in this instance. As a result, neither Respondent nor the Court is able to determine, from this record, what specific services Claimant has rendered and is seeking payment for.

IDPA is obligated to require that vendors report their services accurately and consistently, as a condition precedent to being paid for them; and the State risks a denial of Federal financial participation (FFP) in its MAP expenditures if IDPA fails to do so.

[W]e note that the federal government's continuing participation in the funding of Illinois' MAP program is dependent upon IDPA's regular

enforcement of these regulatory requirements. Applicable here are the requirements: that medical vendors must fully and correctly complete their invoice-forms being submitted for IDPA's payment consideration, so as properly to identify the services being invoiced; * * * and that correctly-prepared invoices be timely received by IDPA. (*Methodist Medical Center v. State* (1986), 38 Ill. Ct. Cl. 208, 210.)

We find no occasion here to depart from our prior holdings and thereby risk jeopardizing Respondent's continuing entitlement to Federal matching funds for IDPA Medical Assistance Program expenditures.

Respondent also asserts that Claimant's cause of action for payment of these services had already been barred, under section 11—13 of the Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, par. 11—13), when this Court action was filed. IDPA's position is that the limitations bar of the Court of Claims Act deprives Claimant of the opportunity to seek payment for these services before this Court. Ill. Rev. Stat. 1985, ch. 37, par. 439.22.

Under section 11—13, a vendor's cause of action "accrued" upon IDPA's written notification that it was disallowing a vendor's "claim" (invoice). Here, Claimant's claim was disallowed on April 2, 1982. The statute provided that vendors "shall commence their actions * * * within one year next after" such accrual. In this instance, Claimant commenced its action, seeking to enforce payment of this patient account, on May 2, 1983, more than one year following accrual of its cause in respect to that account. We agree that this action was not timely filed, and thus that Claimant's cause as to this account had already been "forever barred from prosecution" under section 22 of the Court of Claims Act. Ill. Rev. Stat. 1985, ch. 37, par. 439.22.

It is therefore ordered that Respondent's motion for summary judgment on the complaint and underlying cause, based upon the grounds addressed above in this opinion, is hereby granted; judgment is entered against

the Claimant and in favor of the Respondent; and the claim is dismissed with prejudice.