(No. 84-CC-2607—

Arsenio L. Canlas, M.D., Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed April 28, 1987.*

Arsenio L. Canlas, M.D., *pro se*, for Claimant.

Neil F. Hartigan, Attorney General (Suzanne Schmitz, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This cause is before the Court on Respondent's motion to dismiss the captioned claim. Claimant having been given due notice, and the Court being fully advised in the premises, finds as follows:

Claimant Canlas, a St. Louis, Missouri, physician, is here seeking a vendor payment, as provided in section 11—13 of the Illinois Public Aid Code (PAC) (Ill. Rev. Stat., ch. 23, par. 11—13), from funds appropriated to the Illinois Department of Public Aid (IDPA) for medical services provided to IDPA's "recipients," as defined in section 2—9 of the PAC. The subject of Dr. Canlas' claim is services provided to his patient, Lana McReynolds, during August 1980. His Court action was filed in March 1984.

In its Department report, the contents of which are *prima facie* evidence under rule 14 of the rules of this Court, IDPA advises that there are certain requirements which all medical vendors must meet, in order to be eligible to receive a vendor payment (defined in section 2—5 of the PAC) for their services. These requirements include the following:

(a) The vendor must have been enrolled as a participant in IDPA's Medical Assistance Program (MAP) at the time when the subject services were rendered. (IDPA Rules 140.11 through 140.19, 89 Ill. Admin. Code §§140.11 through 140.19)

(b) The vendor's patient must have been a "recipient", and eligible to receive such services at the Respondent State's expense as determined by IDPA in accordance with applicable statutory requirements, as of the dates on which the services were rendered. See prior decisions of this Court, cited below in this Opinion.

(c) The services must have been "covered services", eligible for payment in accordance with the requirements of IDPA's MAP program. (See, e.g., IDPA Rules 140.3, 140.5, 140.6, 140.7 and 140.9; 89 Ill. Admin. Code §§140.3, 140.5, 140.6, 140.7 and 140.9)

(d) In certain situations, IDPA staff's "prior approval" must have been obtained, for particular services, before the services are provided to the patient by the vendor. (See, e.g., subsec. c of IDPA Rule 140.2; and IDPA Rules 140.40 thru 140.42, *Id.*)

(e) The vendor must have invoiced his services to the department, on IDPA invoice-forms which have been properly prepared by the vendor and timely submitted to IDPA, in accordance with department *Handbook* instructions and regulatory requirements (IDPA Rule 140.20, *Id.*)

The department advises that each of these requirements is explained in its provider (vendor) *Handbooks*, which are furnished, upon enrollment, to each participating vendor.

According to the Department's investigation, this claim is deficient in several respects, as compared with the above requirements. First, Respondent's initial challenge concerns the complaint's alleged failure to state a cause of action. The complaint alleges that Claimant's payment demand for patient McReynolds' services was refused solely due to lapse of appropriated funds. Its exhibits clearly indicate that the subject of this lawsuit is medical services, and that Claimant is presenting a "vendor payment" claim, as defined in Sections 2—5 and 11—13 of the PAC. Section 25 of "AN ACT in relation to State finance (Ill. Rev. Stat., ch. 127, par. 161), authorizes IDPA's payment of such claims "without regard to the fact that the medical services being compensated for by such payment may have been rendered in a prior fiscal year," *i.e.*, payments from the

Department's medical payment fund are not denied by reason of lapsed appropriation. The complaint here is thus contradicted by section 25. As a result, Claimant's allegations misstate Illinois statutory law and, for that reason, fail to state a cause of action. See this Court's decisions in *Midstate Anesthesiologists v. State*, No. 82-CC-942, filed March 1, 1982; *Barnes Hospital v. State*, No. 82-CC-708 *et seq.*, filed March 1, 1982; and *Rock Island Franciscan Hospital v. State*, No. 82-CC-899, filed May 5, 1982; *Henrotin Hospital v. State*, No. 84-CC-3315, filed August 29, 1984 (representing 67 Henrotin Hospital claims dismissed on that date); *St. Anne's Hospital v. State*, No. 84-CC-3063, filed August 29, 1984 (representing 118 St. Anne's Hospital claims dismissed on that date); *Franciscan Medical Center v. State*, No. 84-CC-2655, filed August 29, 1984 (representing 4 Franciscan claims dismissed on that date); and *St. Elizabeth Hospital v. State*, No. 86-CC-1802, filed June 20, 1986.

Second, IDPA reports it finds no record that Dr. Canlas was an enrolled participant in its Medical Assistance Program (MAP), in 1980. In this regard, IDPA advises that many physicians, hospitals and other vendors, located in neighboring states, are enrolled participants; however, Claimant was not among them. To be authorized to receive payment for services to IDPA recipients, a person must first apply to IDPA for enrollment in the Department's MAP program. Until he or she is enrolled, the person cannot be a "vendor", and thus is not entitled to such payment. See subsection d of IDPA Rule 140.13.

Third, Claimant has supplied no evidence that IDPA had determined his patient, Mrs. McReynolds, to be an eligible MAP recipient, with respect to the dates

on which the subject services were rendered. As the Department's records indicate that she was not MAP-eligible on these dates of service, Respondent has no liability for payment of this claim for such services. See this Court's decisions in *Illini Hospital v. State* (1977), 32 Ill. Ct. Cl. 115; *Rock Island Franciscan Hospital v. State*, No. 79-CC-91, filed November 23, 1981; and *Columbus, Cuneo, Cabrini Medical Center v. State*, Nos. 84-CC-401 and 84-CC-734, filed March 7, 1985.

Fourth, Claimant offers no exhibit suggesting that he had ever invoiced his services to IDPA, on the forms prescribed by IDPA regulation (89 Ill. Admin. Code, §140.20), or within the time prescribed by that regulation. Appropriate invoice-forms for billing such services, and IDPA medical vendor *Handbook* provisions explaining the MAP's requirements and providing invoice preparation instructions, would have been available to Dr. Canlas, if he had been a MAP enrolled vendor. Completion of the prescribed invoice forms, and their submission to IDPA prior to the prescribed deadline, are conditions which the enrolled vendor must meet in order to comply with the regulation, and thus to be eligible for vendor payment consideration. *Weissman v. State* (1978), 32 Ill. Ct. Cl. 150; *Rush Anesthesiology Group v. State* (1983), No. 82-CC-1580; and see this Court's March 1, 1982, order in *Barnes Hospital v. State*, No. 82-CC-708 *et seq.*

A vendor's entitlement to a "vendor payment," enforceable under section 11—13 of the Illinois Public Aid Code and under sections 439.8 and 439.22 of the Court of Claims Act, may be "limited by regulations of the Illinois Department" (Ill. Rev. Stat., ch. 23, par. 11—13). Each of the regulatory requirements discussed above imposes a condition which the vendor must meet, if he is to receive a vendor payment for specified

services to a named patient. In this instance, Claimant has failed to demonstrate that he has met such conditions.

It is therefore hereby ordered that the subject claim be, and it is hereby dismissed.