(No. 87-CC-0399—

ALAN T. KRAKORA, D.D.S., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 10, 1987.*

ALAN T. KRAKORA, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (RALANDA WEBB, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This cause is before the Court on Respondent's motion to dismiss. Claimant having been given due notice, and the Court being fully advised in the premises, finds as follows:

Claimant Krakora, a dentist, seeks a vendor payment; as provided in section 11—13 of the Public Aid Code (PAC) (Ill. Rev. Stat., ch. 23, par. 11—13), from funds appropriated to the Illinois Department of Public Aid (IDPA) for medical services provided to IDPA's "recipients," as defined in section 2—9 of the PAC. The subject of Dr. Krakora's claim is services provided to his two patients, Rose Biever (Carlino) and

Chris Biever (Carlino), during the period March 1984 through July 2, 1984. His court action was filed on September 8, 1986.

In its department report, the contents of which are *prima facie* evidence under Rule 14 of the rules of this Court, IDPA advises that there are certain requirements which all medical vendors must meet to be eligible to receive a vendor payment (defined in section 2—5 of the PAC) for their services. These requirements include the following:

a. The vendor must have been enrolled as a participant in IDPA's Medical Assistance Program (MAP) at the time when the subject services were rendered. (IDPA Rules 140.11 through 140.19, 89 Ill. Admin. Code §§140.11 through 140.19.)

b. The vendor's patient must have been a "recipient," and eligible to receive such services at the Respondent State's expense as determined by IDPA in accordance with applicable statutory requirements, as of the dates on which the services were rendered. See prior decisions of this Court, cited below in this opinion.

c. The services must have been "covered services," eligible for payment in accordance with the requirements of IDPA's MAP program. (See e.g., IDPA Rules 140.3, 140.5, 140.6, 140.7 and 140.9; 89 Ill. Admin. Code §§140.3, 140.5, 140.6, 140.7 and 140.9.)

d. In certain situations, IDPA staff's "prior approval" must have been obtained, for particular services, before the services are provided to the patient by the vendor. (See, e.g., subsection c of IDPA Rule 140.2; and IDPA Rules 140.40 through 140.42, *id.*)

e. The vendor must have invoiced his services to the department, on IDPA invoice-forms which have been properly prepared by the vendor and timely submitted to IDPA, in accordance with department *Handbook* instructions and regulatory requirements (IDPA Rule 140.20, *id.*).

The department advises that each of these requirements is explained in its provider (vendor) *Handbooks*, which are furnished, upon enrollment, to each participating vendor.

According to the department's investigation, this claim is deficient in several respects, as compared with the above requirements. Respondent's initial challenge concerns the complaint's alleged failure to state a cause

of action. The Claimant alleges that his payment demand for his two patients' services was refused solely due to lapse of appropriated funds. His exhibits indicate that the subject of this lawsuit is medical services, and that Claimant is presenting a "vendor payment" claim, as defined in sections 2—5 and 11—13 of the PAC. Section 161 (Ill. Rev. Stat., ch. 127, par. 161), authorizes IDPA's payment of such claims "without regard to the fact that the medical services being compensated for by such payment may have been rendered in a prior fiscal year," *i.e.*, payments from the department's medical payment fund are not denied by reason of lapsed appropriation. The complaint here is thus contradicted by section 161. As a result, Claimant's allegations misstate Illinois statutory law and, for that reason, fail to state a cause of action. See this Court's decisions in *Midstate Anesthesiologists v. State* (1982), 35 Ill. Ct. Cl. 442, *Barnes Hospital v. State* (1982), 35 Ill. Ct. Cl. 434, *Rock Island Franciscan Hospital v. State* (1982), 36 Ill. Ct. Cl. 377, *Henrotin Hospital v. State* (1984), 37 Ill. Ct. Cl. 351 (representing 67 Henrotin Hospital claims dismissed on that date), *St. Anne's Hospital v. State* (1984), 37 Ill. Ct. Cl. 348 (representing 118 St. Anne's Hospital claims dismissed on that date), *Franciscan Medical Center v. State* (1984), 37 Ill. Ct. Cl. 347 (representing four Franciscan claims dismissed on that date), and *St. Elizabeth Hospital v. State* (1986), 38 Ill. Ct. Cl. 325.

Second, IDPA reports that Dr. Krakora was not an enrolled participant in its Medical Assistance Program (MAP), in 1984, when the subject services were rendered. To be authorized to receive payment for services to IDPA recipients, a prospective participant must first apply to IDPA for enrollment in the

department's MAP program. Until accepted for participation, the applicant cannot be a "vendor," and thus is not entitled to payment for services rendered prior to submitting an application for enrollment. See subsection d of IDPA Rule 140.13.

Third, Claimant has supplied no evidence that IDPA had determined either of his patients to be an eligible MAP recipient, with respect to the dates on which the subject services were rendered. As the department's records indicate that neither patient was MAP-eligible on these dates of service, Respondent has no liability for payment of this claim for such services. See this Court's decisions in *Illini Hospital v. State* (1977), 32 Ill. Ct. Cl. 115.

Fourth, Claimant offers no exhibit suggesting that he had ever invoiced his services to IDPA, on the forms prescribed by IDPA regulation (89 Ill. Admin. Code, §140.20), or within the time prescribed by that regulation. Section 447.45 of Title 42, Code of Federal Regulations (42 C.F.R. §447.45), also imposes a one-year deadline, following the date of service, for medical-vendors' submissions of their invoices for adjudication by the State Medicaid agency, here IDPA. Completion of the prescribed invoice-forms, and their submission to IDPA prior to the prescribed deadline, are conditions which the enrolled vendor must meet in order to comply with the regulation, and thus to be eligible for vendor-payment consideration. This Court has previously so held. *Good Samaritan Hospital v. State* (1982), 35 Ill. Ct. Cl. 379. See also *Rush Anesthesiology Group v. State* (1983), 35 Ill. Ct. Cl. 851; and *Weissman v. State* (1978), 32 Ill. Ct. Cl. 150.

A vendor's entitlement to a "vendor payment," enforceable under section 11—13 of the Public Aid Code

and under sections 8 and 22 of the Court of Claims Act, may be "limited by regulations of the Illinois Department." (Ill. Rev. Stat., ch. 23, par. 11—13; ch. 37, pars. 439.8, 439.22.) Each of the regulatory requirements discussed above imposes a condition which the vendor must meet, if he is to receive a vendor payment for specified services to a named patient. In this instance, Claimant has failed to demonstrate that he has met any of such conditions.

As a fifth ground for dismissal, Respondent asserts that Claimant's court action for these two patients' services, when filed in September 1986, was already barred by the time limitations imposed by section 11—13 of the PAC, and by sections 22(b) and 22(h) of the Court of Claims Act. Section 11—13 sets out the conditions and limitations applicable to a vendor seeking payment from IDPA for goods and services furnished to an IDPA recipient, *i.e.*, to be paid a "vendor payment." As is made clear in subsection 22(b) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.22(b)), section 11—13 imposes certain limitations on the authority of this Court to entertain vendor-payment actions.

Section 11—13 provides that a vendor's court action must be filed within one year after its cause of action accrues. As amended by Public Act 83-1410, this statute makes identification of the date of accrual turn on the vendor's ability to prove that IDPA had received its invoice within six months for specified services following the date those services were rendered. The statute thus adopts, as one occurrence which causes its time period to begin to run, IDPA Rule 1450.20(c)'s requirement that the vendor's initial invoice be received no later than six months following the date of service.

Respondent asserts that Claimant's cause of action with respect to these two patients' services was barred, at the latest, as of January 3, 1986, or 18 months following July 2, 1984, the most recent date on which the subject services were rendered. Section 11—13 provides:

"(2) If the vendor cannot prove that he submitted a bill [or invoice, to IDPA] for the service within 6 months of the date the service was rendered, then [a cause of action accrues within the meaning of this Section] upon the date 6 months following the date the vendor rendered the service to the recipient;"

and that

"[v]endors seeking to enforce obligations of [IDPA] for goods or services (1) furnished to or in behalf of recipients and (2) subject to a vendor payment ° ° ° shall commence their actions ° ° ° within one year next after the cause of action accrued."

As of January 3, 1985—six months following the most recent date of service to these patients, Claimant had not prepared and submitted his invoice to IDPA for any of these services, although required to do so by Rule 140.20(c). As a result of his failure to comply with Rule 140.20(c)'s initial invoice-submittal deadline, Claimant's cause of action "accrued," with respect to these services, no later than January 3, 1985. And, as his Court action in respect to those services had not been commenced within the ensuing year, Claimant's cause of action in respect to those services was barred by the statute, effective January 3, 1986.

From the record presented, the Court concludes that it lacked authority to entertain this claim for payment of these services, as of the date on which it was commenced. This jurisdictional bar would apply, even if the complaint were amended, and Claimant were to allege some invoicing activity prior to his commencement of the subject Court act.

It is therefore hereby ordered:

That Respondent's motion to dismiss the complaint herein as insufficient in form and substance, and as failing to state a cause of action upon which the relief can be granted, is hereby granted; and

That Respondent's motion for an order dismissing the complaint and the underlying action under paragraph 2—619 of the Code of Civil Procedure, on the ground that this action was already barred by the limitation period imposed by section 22 of the Court of Claims Act when so commenced, is hereby granted.

This action is hereby dismissed with prejudice.