(No. 87-CC-0961–

Nathan M. Simon, M.D., Claimant, v. The State of Illinois, Respondent.

*Opinion filed September 22, 1987.*

Nathan M. Simon, M.D., *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This cause coming on for the Court's consideration on Respondent's motion to dismiss, due notice having been given and the Court, being fully advised, makes the following findings:

Claimant Simon, a St. Louis, Missouri, psychiatrist, commenced this vendor-payment action by filing his complaint herein on November 14, 1986. In it, he seeks to be paid by the Illinois Department of Public Aid (IDPA) Medical Assistance Program (MAP) for

"psychotherapy" services rendered to patient Smith on nine dates of service during April 1982. He alleges that he prepared his invoice to IDPA on or about April 29, 1982, and that "[n]o IDPA vouchers [responding to his invoice] have ever been received."

As noted in IDPA's department report, Claimant's allegations are deficient in a number of particulars closely paralleling IDPA vendor-payment requirements, and corresponding deficiencies, found to exist in *Canlas v. State* (1987), 39 Ill. Ct. Cl. 150. Each such requirement represents an element of a proper "vendor payment" cause of action, filed pursuant to section 11—13 of the Public Aid Code. Ill. Rev. Stat., ch. 23, par. 11—13.

One such element is that the medical vendor must be enrolled as a participant in IDPA's MAP as of the dates on which the invoiced services were rendered, in order for his invoice to receive IDPA's payment consideration. IDPA reports that Claimant was first enrolled in its program in February 1983, over nine months after these services had been rendered.

Other elements are that the services be specifically "covered" services under the MAP, and that the vendor's invoice be prepared in accordance with IDPA instructions. Here, the single invoice alleged identifies Claimant's services only as "psychotherapy," and lists no CPT code (corresponding to numeric *Physicians' Current Procedural Terminology* designations, or procedure codes, of discrete forms of psychotherapeutic services) which would enable IDPA to establish whether Claimant's services were in fact "covered." IDPA's *MAP Handbook for Physicians*, and Appendix A-19a, lists and identifies (by procedure, or CPT, codes) those psychiatric procedures which are MAP-covered. The lack of specificity in Claimant's service identification would

have made it impossible for IDPA to determine, from such invoice, whether MAP coverage existed for these services. IDPA's report details other deficiencies in Claimant's invoice, including the absence of a recipient identification number (or RIN), which was to be entered on the invoice, in order to identify the patient as an IDPA recipient. IDPA concludes, and we agree, that neither the patient nor the services were adequately identified on the invoice, as Claimant had omitted invoice-entries required to be made in accordance with *MAP Handbook For Physicians* instructions.

Still another element is that the vendor's invoice be received by IDPA within the time prescribed by IDPA Rule 140.20 and by Title 42 of Code of Federal Regulations §447.45. Here, Claimant supplies no proof that his invoice was ever received by IDPA. The department advises that it has manually researched its microfilmed records of physicians' invoices received during the period April through September 1982, and that it found no record of having received Claimant's invoice. IDPA would have been unable to adjudicate any invoices received from Claimant during this period by use of automated processes, since Claimant was not then an enrolled MAP participant, and all such invoices would therefore have been ineligible for payment consideration. Claimant has not established his compliance with either the State regulation or the Federal regulation regarding timeliness of invoice receipt. *Rock Island Franciscan Hospital v. State* (1987), 39 Ill. Ct. Cl. 100.

IDPA also challenges this Court action on the ground that Claimant's cause of action in respect to this patient account had already been barred, under the provisions of section 11—13 of the Public Aid Code (Ill.

Rev. Stat., ch. 23, par. 11—13) and of section 22(b) of the Court of Claims Act (Ill. Rev. Stat. 1985, ch. 37, par. 439.22(b)), when Claimant commenced this action. We find that challenge to be valid.

Section 11—13 establishes a one-year limitation on the filing of court claims by vendors seeking State payment for goods and services furnished to or in behalf of IDPA recipients. A vendor's cause of action "accrues"— and the running of the one-year limitation period begins—on the date of specified events; and the statute provides for alternate accrual dates, depending upon when IDPA received the vendor's initial invoice. If the vendor proves that its initial invoice was received by IDPA within six months following the date of service, and if IDPA refused payment of that invoice, then the one-year limitation period begins to run on the date of IDPA's notice to the vendor of such refusal. If, on the other hand, the vendor cannot prove that IDPA received its invoice within six months after the date on which the services were rendered, then the cause of action as to such services accrues six months following the date of service, and the limitation period runs from that date. Under this alternate situation, the vendor must commence its action in this Court within 18 months following the date of service, *i.e.*, within one year following the date of accrual, if it is to avoid the bar of section 11—13's limitation period.

In the instant case, the subject services were rendered on and before April 13, 1982. Claimant alleges a single invoice, prepared in late April 1982, and reports having received no IDPA voucher-response to that invoice. IDPA denies ever receiving the invoice. IDPA's *MAP Handbook*, at page I-37, recommends to medical vendors that

"[i]f more than 60 days have elapsed since mailing of a claim [invoice] and the action taken on that claim by the Department has never been reported on a Remittance Advice [voucher], the assumption is to be made that the claim was not received by the Department."

In such cases, the *Handbook* suggests that the vendor make a written inquiry to IDPA concerning the status of the unreported invoice, or that the vendor promptly resubmit its charges for the services on a second invoice. Written inquiries "must be made within 6 months of the date of service so that the time limits for resubmitted bills [invoices] can be met if resubmittal is necessary." (*Ibid.*) This procedure, if timely followed, would allow the vendor to comply with the resubmittal deadline established in subsection (d)(2) of IDPA Rule 140.20. Claimant does not allege here that he submitted either a written inquiry or a rebill-invoice. He took no action regarding the Smith account until filing this action in November 1986, more than four years after rendering his services, and more than four years after October 14, 1982, when his cause of action accrued as to this account. We find that Claimant's cause of action in respect to these services was barred by section 11—13 on October 14, 1983, one year following such accrual.

It is therefore hereby ordered:

That Respondent's motion to dismiss the complaint herein, on the grounds that Claimant was not an enrolled participant in IDPA's Medical Assistance Program when these services were rendered, that he has failed to establish that such services were MAP-covered, and that he has failed to prove that he submitted an invoice prepared in accordance with IDPA and Federal Medicaid requirements, or that IDPA received such invoice within the time prescribed by State and Federal regulations, is hereby granted; and

That Respondent's motion to dismiss the complaint

and the underlying action, pursuant to paragraph 2—619 of the Illinois Code of Civil Procedure, on the ground that said action was already barred by section 11—13 of the Public Aid Code and by section 22(b) of the Court of Claims Act when so commenced, is hereby granted.

This action is hereby dismissed with prejudice.