(No. 85-CC-2097—

MICHAEL R. TREISTER, M.D., and RONALD WILCOX, M.D., Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 11, 1989.*

WILLIAM L. SILVERMAN, for Claimants.

NEIL F. HARTIGAN, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This section 11—13 vendor-payment action presents claims for medical services rendered by the two above-named physician Claimants to 13 patients, all being recipients under the Medical Assistance Program (MAP) administered by the Department of Public Aid (IDPA). In its departmental report, IDPA advises that it had previously paid Claimants in full for their services to seven of these recipient-patients, and that such payments, although less than Claimants' charges, represented the maximum amounts authorized under IDPA's pricing policy for the procedure-coded services identified in Claimants' invoices (89 Ill. Adm. Code 140.400).

Respondent has moved for summary judgment as to the remaining six patient accounts on the grounds:

(a) that payment of a portion of one account, and the related services, had previously been made to Claimant Treister as part of a "surgical package";

(b) that five of the accounts involve unauthorized charges for "concurrent care," duplicating services which other physicians had performed, invoiced and been paid for by IDPA;

(c) that a third-party liability (TPL) insurance carrier's refusal to pay its share of charges on one account was not properly reported by Claimant Wilcox on his IDPA invoice; and

d) that, as to four of the six accounts, Claimants either failed to submit their charges to IDPA so as to allow for the Department's receipt of their invoices within the times prescribed by IDPA Rule 140.20, or failed to establish that such invoices had ever been received by IDPA.

Due notice of IDPA's report and Respondent's motion having been given, the Court, being fully advised, finds as follows:

Surgical-Service Package Components. Dr. Treister's claim for patient Delarosa's December 14, 1981, services concerns one of several medical procedures, including a surgical procedure, which he had rendered to the patient on that date. IDPA had paid him for the surgical or operative procedure and he seeks payment here also for a related service, application of a leg cast, following surgery on the patient's ankle. Under IDPA's *MAP Handbook For Physicians* policy, a physician's invoiced charge for surgical services is considered as including and covering all services provided by the physician in relation to that surgery. The vendor-payment made in response to such charge thus constitutes payment for a surgical-service package, including all of the separate, surgery-related medical procedures rendered prior to and following the surgery.

"The charge [and thus the payment] made for an operative procedure includes the pre-surgical examination, and complete post-operative care for a minimum period of 30 days, including customary wound dressings." (*Handbook For Physicians*, ch. 200, Topic A-262).

If, as in the instant claim, the physician charges the Department for a surgery-related service component after having received a vendor-payment for the operative procedure, IDPA will refuse payment with the notice-explanation that the invoice contained a charge "for a procedure/visit considered a part of the surgical service package" for which the physician has previously been paid by the Department (*Handbook For Physicians*, in Appendix A-5). In effect, the physician is here seeking additional payment for one component of a service package, after having been paid for the entire

package. IDPA's *Handbook* policy expressly precludes any additional payment for such surgery-package components.

Concurrent Care. Dr. Treister contests IDPA's payment denials concerning patients Delarosa (October 1981 services), Harrington, Kunjasic, Mojica and Serrano, for a succession of daily or periodic "subsequent, limited service" hospital visits. The Department reports that in each instance another physician, usually the patient's attending physician, had charged and been paid for the same services to the patient, rendered on the same dates of service as those for which Dr. Treister is charging. The attending physician is typically the patient's admitting or primary physician.

IDPA's MAP permits payment for routine, daily care and treatment only as rendered by the physician having primary responsibility for the hospitalized patient's management. IDPA policy expressly states that:

"* * * there is no provision for reimbursement for daily or intermittent routine concurrent care *by a second physician,* with or without a prior consultation." (*Handbook For Physicians,* ch. 200, Topic A-262: Emphasis in original.)

Payment for consultation by a second physician is authorized when necessitated by a patient's condition, if properly invoiced as such. Specialized services of one or more additional physicians will also be eligible for payment, "should the complexity of a recipient's condition necessitate" such services, if restricted to "that period of time necessary to resolve the complexity or complication," and provided each physician satisfactorily explains and justifies his or her specialized treatment, in a written narrative, when invoicing his or her services for IDPA's payment consideration. See *Handbook For Physicians.* Thus, the occasion for such specialized, concurrent care must be made apparent in each instance.

As to these five patients, IDPA reports that Dr. Treister's invoices characterized his services as routine, maintenance of care visits, without accompanying explanation or justification. This establishes that his hospital visits paralleled—and perhaps duplicated—those visits on the same dates of service by the patients' respective attending physicians. As his services were not MAP-covered, they are not entitled to vendor-payment.

Reporting TPL Adjudication or Disposition. The MAP is payor of last resort as to all services for which a third-party liability (TPL) carrier, such as the Federal Medicare program, has or may have primary payment responsibility.

"This MAP policy, described in IDPA's medical handbooks, assures that the Department's payments serve only to supplement, and not duplicate or replace, other benefits and coverage which are available to pay for a recipient's medical care." (*Riverside Medical Center v. State* (1988), 40 Ill. Ct. Cl. 279.)

Effective enforcement of this policy requires that vendors make a full report to IDPA of their prior efforts to obtain payment from TPL carriers, in accordance with IDPA *Handbook* requirements, when invoicing their charges to the Department. If the carrier has denied liability, the vendor is obligated to make a timely report of that denial to IDPA by accurately completing the TPL Code section of the invoice form being submitted to IDPA. The report enables the Department to investigate and, if necessary, challenge the carrier's justification for refusing payment.

Dr. Wilcox alleges a single invoice of his charges for patient Cruz' services, prepared 27 months after the services had been rendered and 22 months after Medicare had denied liability. The invoice could not have been received by IDPA within six months following Medicare's denial-disposition, as required by

subsection (c)(3) of IDPA Rule 140.20 (89 Ill. Admin. Code 140.20(c)(3)). Further, the invoice's TPL Code section contains no entries which would have reported to IDPA that the Cruz account had been billed to Medicare or that Medicare had denied the existence of Part B coverage, even though IDPA records show that Cruz had such coverage available. We conclude Respondent has no payment obligation for these services, as Claimant failed to comply with applicable TPL-adjudication reporting requirements or with IDPA's invoice-receipt deadline.

Tardy Invoice Submittal. Claimants prepared their initial DPA-form invoices for the Cruz, Harrington, Mojica and Serrano accounts from 10 to 27 months after having rendered their services to these patients. They offer no proof that the Cruz and Serrano invoices were ever received by IDPA. If IDPA had acknowledged receipt of these two invoices, then Claimants should have been able to produce or identify IDPA's voucher-responses to them and thus plead the previous "action taken" by the Department when presenting their claims, as required by section 790.50 of the Court of Claims Rules (74 Ill. Adm. Code 790.50(a)(3)(B)). See our Feb. 26, 1988, opinion in *Franciscan Medical Center v. State* (1988), 40 Ill. Ct. Cl. 272.

In a series of decisions, this Court has given recognition to IDPA's regulatory requirement that vendors' initial invoices, charging for goods and services supplied to recipients, must be received by the Department within six months following the date services were rendered or goods supplied, in order for Respondent to be liable for paying such charges. (*Weissman v. State* (1977), 31 Ill. Ct. Cl. 506; *Rush Anesthesiology Group v. State* (1983), 35 Ill. Ct. Cl. 851;

*St. Joseph's Hospital v. State* (1984), 37 Ill. Ct. Cl. 340; *St. Anthony Hospital v. State* (1984), 37 Ill. Ct. Cl. 342; *Mercy Hospital v. State* (1985), 38 Ill. Ct. Cl. 389 and 38 Ill. Ct. Cl. 388; *Bethesda Hospital v. State* (1986), 39 Ill. Ct. Cl. 299; *Louis A. Weiss Memorial Hospital v. State* (1986), 39 Ill. Ct. Cl. 299; *Riverside Medical Center v. State* (1986), 39 Ill. Ct. Cl. 301; *St. Bernard Hospital v. State* (1986), 39 Ill. Ct. Cl. 300; *Rock Island Franciscan Hospital v. State* (1987), 39 Ill. Ct. Cl. 100; *Canlas v. State* (1987), 39 Ill. Ct. Cl. 150; *Krakora v. State* (1987), 40 Ill. Ct. Cl. 233, no. 87 CC 399; *Simon v. State* (1987), 40 Ill. Ct. Cl. 246; *Pinckneyville Medical Group v. State* (1988), 41 Ill. Ct. Cl. 176; and *Passavant Area Hospital v. State* (1988), 41 Ill. Ct. Cl. 222.) We have also considered exceptions to the six-month invoicing deadline, available in certain circumstances under subsection (c) of IDPA Rule 140.20. *Rock Island Franciscan Hospital v. State* (1984), 37 Ill. Ct. Cl. 343; *Franciscan Medical Center v. State* (1988), 40 Ill. Ct. Cl. 274; *Riverside Medical Center v. State* (1988), 40 Ill. Ct. Cl. 275; and *Pilapil v. State* (1988), 41 Ill. Ct. Cl. 217 and 41 Ill. Ct. Cl. 223.

As noted in its report, IDPA's policies pertaining to payment for surgical-service packages and concurrent care, and to timely invoicing and TPL-adjudication reporting, are explained in its *MAP Handbook For Physicians*. The Department reports that it had issued a copy of this *Handbook* to each MAP-participating physician upon the physician's initial enrollment in the program. By consulting the *Handbook* explanations of payment-refusal codes, Dr. Treister would also have understood the reasons stated ("Surgical Package Previously Paid" and "Hospital Visit Disallowed") on vouchers issued by IDPA in response to his invoices.

It is hereby ordered and adjudged that Respon-

dent's motion for summary judgment is granted, Claimants having been paid in full as to seven of the subject accounts, and having failed to comply with IDPA policy requirements applicable to the remaining six accounts, as discussed above. Judgment is hereby entered against Claimants and in favor of Respondent on the subject claim; and said claim is dismissed with prejudice.