(Nos. 88-CC-2783 through 88-CC-3033 cons.—

CHANG S. KIM, M.D., DOMINICK S. RENGA, M.D., and MICHAEL R. TREISTER, M.D., for TREISTER ORTHOPAEDIC SERVICES, LTD., Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 29, 1991.*

WILLIAM L. SILVERMAN, for Claimants.

ROLAND W. BURRIS, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION AND JUDGMENT

Raucci, J.

The 251 captioned, vendor-payment actions are before the Court on Respondent's motions for summary judgment as to each of them, pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005), and for dismissal of 235 of said actions pursuant to section 2—619, *Id.*, section 790.90 of the Court of Claims Regulations (74 Ill. Admin. Code §790.90), section 22(b) of the Court of Claims Act (or

"CCA," Ill. Rev. Stat. 1987, ch. 37, par. 439.22(b)), and section 11—13 of the Public Aid Code (or "PAC," ch. 23, *Id.*). The Claimant physicians having received notice of said motions, the Court finds as follows:

*Statutory Time Bar.* Respondent asserts that Claimants' causes of action, in 235 of these actions (each presenting charges for a single patient account) and additional, partial accounts in instances involving multiple dates of service, had previously been barred from prosecution as of March 4, 1988, the date on which they were filed with this Court. The State contends that the Court lacks jurisdiction to grant any relief as to such accounts. The actions and related accounts which Respondent challenges on this ground include: those seeking payment for services rendered on and before September 3, 1986, i.e., services rendered more than eighteen months prior to Claimants' commencement of these actions (see PAC par. 11—13, subpar. (2)); as well as those actions and accounts Claimants' initial DPA-form 2360 invoices for which IDPA had "refus[ed] to pay * * * in whole or in part" (*Id.*, subpar. (1)) in notices (IDPA voucher-responses or remittance advices) issued more than one year prior to March 4, 1988. The related services span the period from March 1982 (in No. 88-CC-2789) through November and December 1986 (Nos. 88-CC-2783 and 88-CC-2969), Claimants' initial invoices for the latter two accounts having been refused payment by IDPA notices issued on February 4, 1987.

This Court has consistently taken the position that it lacks jurisdiction to consider the merits of those vendor-payment claims which were not commenced within the time periods prescribed by section 22(b) of the CCA and section 11—13 of the PAC. *Sitka v. State* (1977), 31 Ill. Ct. Cl. 548; *Weissman v. State* (1978), 32 Ill. Ct. Cl.

150; *Midstate Anesthesiologists v. State*, No. 82-CC-942 (Order filed Mar. 1, 1982); *Northwestern Memorial Hospital v. State* (1983), 35 Ill. Ct. Cl. 871; *Simon v. State* (1987), 40 Ill. Ct. Cl. 246; *Krakora v. State* (1987), 40 Ill. Ct. Cl. 233; *Memorial Medical Center v. State* (1988), 40 Ill. Ct. Cl. 73; *Franciscan Medical Center v. State*, Nos. 84-CC-0118, *et al.*; *Riverside Medical Center v. State*, No. 87-CC-0780; *Pinckneyville Medical Group v. State* (1988), 41 Ill. Ct. Cl. 176; *Pilapil v. State* (1989), 41 Ill. Ct. Cl. 223; *Sarah Bush Lincoln Health Center v. State* (1990), 42 Ill. Ct. Cl. 303; and *Gupta v. State* (1990), 42 Ill. Ct. Cl. 269. Neither Respondent nor this Court has authority to.waive the limitation period or other limit on the Court's jurisdiction, as established by the General Assembly. *Illinois Bell Telephone Co. v. State* (1981), 35 Ill. Ct. Cl. 345; *Potter & Struebin v. State* (1987), 39 Ill. Ct. Cl. 197; and *St. John's Hospital v. State*, No. 86-CC-2055.

Having reviewed the facts (dates of Claimants' services and of IDPA's payment-refusal notices relative to certain of said services) as outlined in Claimant's complaints and IDPA's consolidated report herein, the Court concludes that each of Claimants' causes as to the claims and portions of claims specified in said report had in fact been barred by statute, prior to Claimants' filing of the related actions as discussed above. Accordingly, the Court has no authority to award Claimants any relief as to said claims.

*Multiple Surgical Procedures and Complex Surgery.* Claimant Treister submitted charges to IDPA for three separate procedure codes, viz., PCs 29881 (considered by IDPA to be the "major procedure"), 29875 and 29879, all relating to arthroscopic knee surgery performed on patient Brito (No. 88-CC-2796), at

the same operative session on November 17, 1986. Applicable Department policy is explained in IDPA's MAP *Handbook For Physicians:*

"The procedure code for the major [surgical] procedure is to be used [reported on the invoice] when multiple procedures are performed ° ° °. *When multiple surgical procedures are performed through the same incision, payment will be based on the major procedure.*" (*Id.,* Topic A-262.2; emphasis supplied.)

Following this policy, IDPA paid Claimant for PC 29881, the major procedure; and refused payment for the two related procedures. The *Handbook* also provides:

"When a charge [invoice to IDPA] for surgery is greater than the physician's usual and customary fee for the procedure, *based upon the operation being seriously complicated by factors not usually present,* the physician is to submit [with his or her invoice] clinical data adequate to support [the extraordinary charge for] the claim." (*Id.,* emphasis supplied.)

As Claimant's invoice was accompanied only by a pathology report (insufficient to support his charges for the two rejected procedure codes). IDPA's payment-refusal notice advised Claimant that "Additional Information [was] Required," e.g., narrative "clinical data" descriptive of the surgery which would be "adequate to support" and justify his separate charges for all three procedures.

Claimant has not established that IDPA received his rebill-invoice of these charges by November 17, 1987, i.e., within the one year period prescribed by IDPA Rule 140.20 (89 Ill. Admin. Code §140.20) and by Federal Medicaid regulation (§447.45(d) of Title 42, Code of Federal Regulations). See this Court's decisions in *Pilapil v. State* and *Gupta v. State,* both cited *supra.* See also, *Methodist Medical Center v. State* (1986), 38 Ill. Ct. Cl. 208; *Memorial Medical Center v. State; Franciscan Medical Center v. State; Riverside Medical Center v. State;* and *Sarah Bush Lincoln Health Center v. State,* all cited *supra.*

The result of this process is that Claimant Treister was paid for the major procedure performed on patient Brito. He also had the time-limited opportunity to rebill either or both of the other procedures with whatever documented clinical data he might have had available to show that this surgery was "seriously complicated by factors not usually present" and which might thus have justified a vendor-payment in addition to that made for the major procedure. Such "additional information" necessary to process the rebill (§447.45(b) of 42 C.F.R.), properly documented, would clearly have been an essential part of a "clean claim" (*Id.*) rebill-invoice of Claimant's charges for these two procedures. Given Claimant's failure to show that a "clean claim" rebill was received by IDPA prior to the regulatory deadline, we conclude, in accordance with subsection (e) of IDPA Rule 140.20, that the Department has no payment liability for the procedures represented by codes 29875 and 29879. *Ryan v. State* (1990), 43 Ill. Ct. Cl. 213.

The claim in No. 88-CC-3002 consists of Claimant Treister's charge for applying a cast to patient Torres following Claimant's manipulation surgical treatment of a bone fracture. As IDPA had paid Claimant for the separately-invoiced surgical treatment, we find that such payment covered the entire surgical-service package, including application of the cast. See *Treister & Wilcox v. State* (1990), 42 Ill. Ct. Cl. 185.

*Prepaid Health Service-Plan Coverage and Access-Restrictions To Health Care.* Several of Claimants' invoices (e.g., in Nos. 88-CC-2969, 88-CC-2970 and 88-CC-3007) were refused payment by IDPA because the services invoiced were covered by prepaid health care plans (contracted with HMOs, or health maintenance organizations), which coverage IDPA had purchased for

the patient-recipients served and was in force when Claimants' services were rendered. Section 5—11 of the PAC authorizes the Department's State-financed provision of such coverage. The medical-eligibility card (MEC), issued by IDPA to the HMO-enrolled recipient, identifies the HMO in which the recipient is enrolled, so that the medical vendor who treats that recipient may bill his or her services directly to the HMO for payment. *Handbook* Topics 131 and 133.

"In no instance will [IDPA] reimburse a [vendor] when the service provided a recipient is one which the HMO has contracted to pay." (*Id.*, Topic 133)

Thus, Claimants' recourse in these matters was to bill his services to the HMO for payment, rather than to IDPA.

The treatment involved in No. 88-CC-3007 also required the prior, written authorization of the recipient's designated primary care physician (PCP), before being rendered; and Claimant Renga was obliged to submit the PCP's authorization for such treatment (on a DPA form 1662), when billing his treatment charges for payment. These access-restriction requirements had been imposed as a result of the recipient-patient's history of utilizing medical services "at a frequency or amount not medically necessary" as gauged by established standards. ($1396n(a)(2) of 42 U.S.C.), in accordance with applicable regulations ($431.54(e) of 42 C.F.R.; and $120.80 of 89 Ill. Admin. Code). The PCP's name was listed on the MECs which IDPA had issued to the recipient; and vendors were advised (*Handbook* Topics 131.18 and 134) that the PCP's written (DPA 1662) authorization must be obtained before rendering non-emergency care to the recipient. Claimant's compliance, by submitting the PCP's authorization with his bill or invoice, was essential to the Department's efforts to prevent overutilization of

services under its Recipient Restriction Program, or RRP (*Id.*, Topic 134).

*Tardy Invoice Submittal.* In the remaining fifteen actions, Claimants Renga and Treister are seeking vendor-payments for the following accounts:

| Patient Account | Date(s) Of Service | Date Of Initial DPA-form 2360 Invoice(s), Alleged by Claimants |
|---|---|---|
| 88-CC-2786—Amador | September 10 & 25, 1986 | 3 invoices, all dtd. "09/17/86" |
| 88-CC-2796—Brito | November 11, 1986 | "01/09/87" |
| 88-CC-2808—Williams | September 16, 1986 | "09/16/86" |
| 88-CC-2825—Colon | September 16(26?), 1986 | "09/17/86" |
| 88-CC-2844—Dominowski | October 24 & 28, 1986 | "01/09/87" |
| 88-CC-2873—Granada | September 13, 1986 | "09/17/86" |
| 88-CC-2886—Howard | September 23, 1986 | "11/17/86" |
| 88-CC-2910—Lozada | January 12, 1987 | "03/18/87" |
| 88-CC-2933—Olivo | October 11, 1986 | "11/17/86" |
| 88-CC-2944—Perez | December 16, 1986 | "02/18/87" |
| 88-CC-2956—Rasho | November 20, 1986 | "*01*/01/86" |
| 88-CC-2963—Rivera | November 15, 1986 | "01/08/87" |
| 88-CC-2978—Ruiz | November 18, 1986 | "01/08/87" |
| 88-CC-3006—Vazquez | November 20, 1986 | "02/18/87" |
| 88-CC-3016—Velez | March 17, 1987 | "03/19/85" |

Claimants' pleadings fail to establish that any of these 17 invoices was received by IDPA within the time prescribed by IDPA Rule 140.20 and 42 C.F.R. section 447.45(d). Yet, with only one exception (patient Velez's services in No. 88-CC-3016), all of said services had been rendered more than one year prior to March 4, 1988, when these Court actions were filed.

In each instance, the Claimant's allegations suggest that he had timely prepared his form 2360 invoices for submittal to IDPA. IDPA policy provides that, except for vendor-payment claims submitted on unapproved forms or otherwise facially unacceptable for automated processing,

"all claims [vendor invoices] received are assigned a Document Control Number, microfilmed and computer processed [for assessment of payment entitlement]. The action taken on each [invoice] so processed is reported to

the provider [vendor] on Form DPA 194-M-l, Remittance Advice [or voucher-response]." (MAP *Handbooks*, Topic 144.)

Thus, if IDPA had received any of these 17 invoices, then the Claimant should be able to produce or identify IDPA's voucher-response to that invoice for the purpose of pleading IDPA's "action taken" in respect to it, as required by Rule 5(A)(3)(b) of the Court of Claims Regulations (74 Ill. Admin. Code §790.50(a)(3)(B)). See *Treister & Wilcox v. State*; and *Franciscan Medical Center v. State*, both cited *supra.* The Claimant should be able to produce any such voucher, because State and Federal Medicaid regulations obligate vendors to maintain and retain all of their business and professional records relating to their services rendered to IDPA recipients. 89 Ill. Admin. Code §140.28; 42 C.F.R. §§431.17 and 431.107(b); and see the MAP *Handbook For Physicians*, Topics 112, A-205, A-230 and A-240.

If any invoice was transmitted but not received by IDPA, the Claimant would have been alerted to that fact when, after 60 days, he had not received IDPA's voucher acknowledging such invoice. In such instances, he is urged (*Handbook* topic 144) promptly to submit either a written inquiry or a replacement invoice. *Simon v. State* (1987), 40 Ill. Ct. Cl. 246, 250-51; and *Franciscan Medical Center v. State*, cited *supra.* Here, neither Claimant alleges that he had taken such action as to any of these 15 accounts.

Also noted is the fact that, were Respondent now to pay Claimant for any of said recipients' care, the payment would not qualify for Federal Medicaid matching funds, given Claimants' failures to invoice their related charges to IDPA within the time prescribed by 42 C.F.R., section 447.45. This Court has previously reviewed the likely implications for the funding of IDPA's

MAP expenses, if we were to disregard Federal regulatory requirements in such matters; see, as examples, *Memorial Medical Center, Riverside Medical Center* and *Pinckneyville Medical Group*, all cited *supra*.

It is therefore hereby ordered and adjudged that Respondent's Motion For Summary Judgment is granted as to each of these 251 claims, Claimants Kim's, Renga's and Treister's causes as to the accounts presented in 235 of such claims (and portions of additional claims) having previously been barred by statute; Claimant Treister having been paid in full for patient Brito's November 17, 1986 services (No. 88-CC-2796) and patient Torres' November 7, 1986 services (No. 88-CC-3002) to the extent they had been timely and properly invoiced; and Claimant Renga's and Treister's pleadings having failed to establish that their charges in the 15 remaining actions had been invoiced to IDPA in the manner and within the time prescribed by State and Federal regulatory requirements. Judgment on all issues presented is entered against Claimants and in favor of Respondent; and each of said claims is dismissed.