(Nos. 86-CC-3046, 86-CC-3058 through 86-CC-3072 inclusive, 86-CC-3365 through 86-CC-3368 inclusive, 86-CC-3497 through 86-CC-3499 inclusive, 86-CC-3351, 87-CC-0115, 87-CC-0117, 87-CC-0148, 87-CC-0149, 87-CC-0231 through 87-CC-0233 inclusive, 87-CC-0352 through 87-CC-0356 inclusive, 87-CC-0405, 87-CC-0406, 87-CC-0472 through 87-CC-0478 inclusive, 87-CC-0480, 87-CC-0481, 87-CC-0654 through 87-CC-0658 inclusive, 87-CC-0827, 87-CC-1102, 87-CC-1241, 87-CC-2016 through 87-CC-2022 inclusive, 87-CC-2569 through 87-CC-2572 inclusive, 87-CC-2574 through 87-CC-2580 inclusive, 87-CC-2582 through 87-CC-2589 inclusive, 87-CC-4145 through 87-CC-4148 inclusive, 87-CC-4150, 88-CC-0311–

ROLANDO BAUTISTA, M.D., MANNY CHUDWIN, M.D., ROBIN CLEMONS, M.D., VINCENT COSTANZO, M.D., JAMES C. DANIELS, M.D., ENRIQUE DAVID, M.D., MAYANK DOSHI, M.D., HARRY FARBER, M.D., MORRIS FRIEDELL, M.D., PETER FRIEDELL, M.D., JACK FUHRER, M.D., GANIYU KEHANDE, M.D., MARGARET LEVY, M.D., GEORGIA LUBBEN, M.D., CARTER MECHER, M.D., HARSHAD MEHTA, M.D., BENGALORE MURTHY, M.D., MARK NISSENBAUM, M.D., WITOLD RYBICKI, M.D., JOSEPH TAN, M.D., AND AUGUSTIN VITUALLA, M.D., Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 12, 1994.*

FRIEDELL CLINIC, for Claimants.

ROLAND W. BURRIS, Attorney General (MICHAEL F. ROCKS, Assistant Attorney General, of counsel), for Respondent.

OPINION

MITCHELL, J.

Each of these 87 court actions presents an individual Claimant-physician's vendor-payment charges, pursuant to section 11—13 of the Public Aid Code (or PAC) (305 ILCS 5/1—1, *et seq.*), for medical services rendered to an Illinois Department of Public Aid (IDPA) recipient or a Spenddown enrollee (*St. Anthony Hospital Medical Center v. State* (1991), 44 Ill. Ct. Cl. 98) under the department's Medical Assistance Program (or MAP). The subject services are identified by five-digit Procedure Codes (PCs), relating to medical procedures as listed in the physicians' *Current Procedural Terminology, 4th Ed.* (or CPT-4), and by the dates of service (or DOS), the dates on which Claimants rendered the various services. (See *University of Illinois at Chicago v. State* (1992), 44 Ill. Ct. Cl. 356; and *Kim v. State* (1991), 43 Ill. Ct. Cl. 286, 289-91.) In its consolidated report, IDPA advises that it had paid for the services identified in 13 of these patient accounts, to the extent that Claimants' pleadings establish the Department's receipt of their timely-submitted invoices for such services. These payments constitute payment-in-full for the related services. (*Ryan v. State* (1990), 43 Ill. Ct. Cl. 213.) Respondent denies vendor-payment liability (except as to two partial accounts identified *infra*), for the remaining 74 accounts. The Claimants having received notice of Respondent's denial, the Court makes the following findings.

Consultant Services and Surgery Issues. A consultation is the service performed by a physician-specialist in a certain medical field, at the request of a patient's attending physician with respect to the diagnosis and/or treatment of a particular illness, such that the requesting, or attending physician retains ongoing responsibility for the patient's direct care. As defined by IDPA's policy, a consultation comprises "the entire package of physician services required to arrive at a decision and/or recommendation regarding a patient's condition and plan of treatment." (MAP *Handbook For Physicians*, Topic A-240.) IDPA questions Claimant Friedell's charge (no. 86-CC-3067), in the absence of a written report or other explanation of a change in the patient's condition, for an "initial consult" (either PC-90620 or PC-90630), when Claimant had charged and been paid for the same service to the same patient performed two weeks earlier. Also questioned are charges by Claimants Daniels and David (nos. 86-CC-3499 & 86-CC-3071), absent explanatory documentation, for consults performed within one to two days of other consults for the same patients, for which other physician-specialists had charged and been paid. Applicable *Handbook* policy states that no payment will be made

"for multiple consultations by physicians of different specialties unless the need [medical necessity] for such is substantiated by the recipient's physical condition or complications." (*Id.*, topic A-240.)

as explained and justified in documents accompanying the consultants' invoices. In another instance (no. 87-CC-0354), Claimant David's charge for a pathology consult performed during surgery (PC-88329) had been refused payment because Claimant had miscategorized, in his invoice, the type-of-service (T.O.S.) role in which he was performing when rendering that consult. When preparing their invoices, physicians are to identify (by proper code) a T.O.S. role which logically and consistently relates to

each procedure (PC) charged in that invoice. IDPA had refused payment of Claimant David's charge for another account (no. 87-CC-4148) because he had failed to identify, in his invoice, the physician who had requested his consult services. (*Ryan v. State, supra* at 214-15.) In each of these cases, Claimants' pleadings fail to establish that their properly-prepared and documented invoices, identifying the referring-physician and listing a T.O.S. role consistent with each PC charged, had been received by IDPA prior to the one-year deadline for such receipt imposed by IDPA Rule 140.20 (89 Ill. Adm. Code, section 140.20) and by Medicaid regulation (42 C.F.R., section 447.45).

In no. 86-CC-3064 Claimant Clemons charged for hospital-visit care of a maternity patient. IDPA advises that it had paid another physician for the Cesarean-section delivery (PC-59501) of this patient's child; and that said "combined service package" payment included all antepartum and postpartum care of the patient during her inpatient stay. Claimant was thus charging for a portion of the service package, even though the other physician had charged, and been paid for, all services comprising the C-section delivery package. (Compare *Treister & Wilcox v. State* (1989), 42 Ill. Ct. Cl. 185, 187-89; and IDPA Rule 140.413(a)(9) (89 Ill. Adm. Code section 140.413(a)(9).) In another claim (87-CC-2019), Claimant Vitualla charged for a surgical procedure considered by the Department as "performed for cosmetic purposes," and thus excluded from MAP-coverage by IDPA Rule 140.6(k) (89 Ill. Adm. Code, section 140.6(k), reprinted in *Handbook* Topic 103). Claimant's invoice was refused payment in a voucher-response notice which advised that "additional information [would be] required," in any rebill-invoice of the charge (*Handbook* App. A-5, error code C02), to

establish possible coverage of the procedure (*Kim v. State, supra*, at 290-91); and while Claimant alleges three rebill-invoices, he fails to establish that any of them was received by IDPA within the prescribed one-year period. *St. Therese Medical Center v. State* (1992), 45 Ill. Ct. Cl. 370; and *Palos Community Hospital v. State* (1983), 46 Ill. Ct. Cl. 458.

Access-Restrictions And Invalid Payee-Option Number. Nineteen accounts are identified as involving services to recipients who were subject to IDPA's RRP (Recipient Restriction Program) requirements, *i.e.*, IDPA recipients who had

"° ° ° received medical services in excess of need and with such frequency or in such a manner as to constitute an abuse of [their] medical care privileges ° ° °." (PAC §11—26(a))

An RRP recipient's access to nonemergency care is limited to those services which have been authorized in writing by the recipient's primary care physician (PCP). See *Kim v. State, supra* at 292-93. As to the 19 accounts here challenged, Claimants fail to establish that their invoices, accompanied by the DPA 1662 authorizations of their patients' PCPs, had been received by IDPA within the prescribed one-year period.

Claimant Murthy's claims for payment of seven accounts for services rendered during 1985 are contested as a result of his failure properly to identify, in his invoices, the payee-option, number-coded address to which vendor-payments for specific services were to be mailed. In 1985 IDPA authorized each MAP-enrolled physician to designate up to four different mailing addresses to which subsequent payments for his or her MAP-services were to be mailed. This multiple address option was made available as a bookkeeping accommodation, in recognition that a physician might be affiliated with two

or more group practices, or might maintain a practice in offices at two or more locations. By entering a *pre-arranged* payee number on each DPA-form invoice submitted, the physician could thereby inform the department as to which of several *pre-designated* addresses he or she wished its payment of that invoice to be mailed.

IDPA reports that during 1985, Claimant Murthy had designated only a single address (*i.e.*, only Payee-Option number 1) to which all payments for his MAP services were to be sent. Despite this fact, he had listed Payee address "3" on each invoice offered in support of these seven accounts, thus causing confusion as to what address he was directing payments of these invoices were to be mailed. Because Claimant had not previously designated either a Payee "2" or "3" address, it was unclear what mailing instruction he had intended to convey in these invoices. Although Claimant could have resolved this confusion by timely submitting rebill-invoices listing a correct Payee-number, he does not allege here that he had taken that action prior to IDPA Rule 140.20's deadline.

"Clean Claim" Rebill Requirement. Other invoicing errors had prevented Claimants from obtaining payment on certain accounts. These errors or omissions include:

(a) a failure accurately to identify, by name and correct provider number, the physician who had performed the services being invoiced (*e.g.*, in nos. 87-CC-0476, 87-CC-4150 & 88-CC-0311—compare *Brand, Beck & Hoover Assoc. v. State* (1992), 44 Ill. Ct. Cl. 284);

(b) a failure accurately to identify the patient by his/her IDPA-assigned RIN (Recipient Identification Number, no. 87-CC-0352—see *Gupta v. State* (1990), 42 Ill. Ct. Cl. 269, 272-73);

(c) a failure to identify the place of service (P.O.S.) or facility in which the services were rendered (no. 86-CC-3531—see *Ryan v. State*, cited *supra*);

(d) a failure accurately to identify, by coded entry, the diagnosis, or medical condition, which occasioned the need for treatment (no. 87-CC-0353—see *Riverside Medical Center v. State* (1988), 40 Ill. Ct. Cl. 274, *et seq.*; and

(e) a failure to identify the services performed, by entry on the invoice of correct PCs (no. 87-CC-0354—see *Ramabrahmam v. State* (1990), 43 Ill. Ct. Cl. 351).

Claimants could have resolved these deficiencies by preparing and submitting "clean claim" (42 C.F.R. §447.45(b)), rebill-invoices, reporting therein to IDPA all corrected or previously-omitted data. (*St. Therese Medical Center, Palos Community Hospital; Ryan v. State, supra* at 215; and *Kim v. State, supra* at 290-91). The complaint allegations offered here suggest, however, that Claimants had failed to take such remedial actions—and thereby exhaust their administrative remedy (705 ILCS 505/25; and Court of Claims Regulations sec. 790.60), within the prescribed one-year period.

TPL Adjudications Not Reported. Respondent reports that 10 of these 74 accounts charge for services rendered to recipients who had TPL (third party liability) insurance coverage available, from Medicare (42 U.S.C. §1395, *et seq.*) or a commercial healthcare insurer, on the dates said services were rendered. As IDPA's MAP is the payer of last resort whenever a TPL insurer has or may have primary payment responsibility (42 U.S.C. §1396a(25); 42 C.F.R. §§433.135 through 433.154; *Handbook* topic 120, *et seq.*; *Rock Island Franciscan Hospital v.*

*State* (1984), 37 Ill. Ct. Cl. 343; *Pilapil v. State* (1988), 41 Ill. Ct. Cl. 223; *Treister & Wilcox, supra,* 189-90; and *Rockford Urology Assoc., Ltd. v. State* (1993), 45 Ill. Ct. Cl. 376), the Claimant was required: to bill his or her charges for such services for the primary insurer's adjudication, and then to report the result of that adjudication when submitting his or her residual charges (in items 37A through 38D of the DPA 2360 invoice-form) for IDPA's adjudication.

The record here shows that, in some cases, Claimants had initially invoiced their charges to IDPA without first billing them to the insurer of a recipient believed to have TPL coverage; and IDPA had refused payment of these invoices because of the absence, in Claimants' invoices, of any report of a prior adjudication by the TPL insurer. In other cases, the DPA-form invoices alleged as complaint exhibits fail to report TPL adjudications by such recipients' insurers; and Claimants' pleadings do not establish IDPA's receipt of their invoices, with TPL adjudications properly reported, within the time prescribed by IDPA Rule 140.20 (*Christ Hospital v. State*, No. 92-CC-0018, opinion filed Mar. 24, 1992). Absent accurate and timely reporting of such adjudications, IDPA is left to conclude that these charges may well be the payment responsibility of the recipients' primary insurers.

Invoices Not Shown Received By IDPA. Respondent identifies 57 of these unpaid accounts or partial accounts, Claimants' pleadings for which fail to establish that any DPA-form invoice of the related charges had been received by IDPA within one year following the dates of service (DOS).

Court of Claims Regulations section 790.50(a)(3) (74 Ill. Adm. Code 790.50(a)(3)) requires a claimant to identify in his or her complaint both the previous, administrative presentations of a claim to a State agency, and the

"action taken" by the agency in response to that claim. Once both specific invoices and specific IDPA voucher (or "remittance advice") responses to those invoices are presented by a PAC section 11—13 vendor-claimant, the department can investigate efficiently and report its position; and the Court is then able effectively to assess (a) the merits of the claim and the claimant's prior invoice-presentations of it, and (b) the reasons for IDPA's prior refusal to pay it. Medical-vendor claimants' heedful compliance with Court of Claims Regulations section 790.50(a)(3)'s requirements is especially important, because State payment liability is contingent upon a showing, in such claimants' complaints, that their invoices had been received by the department prior to IDPA Rule 140.20's prescribed deadline. *Simon v. State* (1987), 40 Ill. Ct. Cl. 246, 249; *Brand, Beck & Hoover Association v. State, supra* at 286-87; and *Kim v. State, supra* at 293-94.

IDPA's invoice-processing system records each invoice, upon its receipt, and issues a voucher-response to the vendor who had submitted the invoice, notifying the vendor that the invoice is being paid, refused payment, or suspended for review of payment-entitlement (*Handbook* topic 142). If payment is refused, the voucher-response notice will list a coded reason for the refusal (*Treister & Wilcox v. State* (1989), 42 Ill. Ct. Cl. 185, 187 & 191), referring the vendor to a MAP *Handbook* provision which explains the reason and may suggest corrective action (e.g., submittal of a rebill-invoice with all required data correctly reported or documented). (*Kim v. State, supra* at 290-91.) The vendor is cautioned that, if a particular invoice is not acknowledged by a notice within 60 days after the invoice was submitted, he or she should promptly submit a replacement-invoice to IDPA. *Handbook* Topic 144; *Peterson v. State* (1990), 43 Ill. Ct. Cl. 347; and *Kim v. State, supra* at 293-94.

As to these 37 accounts, Claimants' pleadings fail to supply or identify any voucher-response notice or other document which would enable IDPA to verify that any invoice of their related charges had been received by the department within one year following the corresponding DOS. In the absence of such verification notices, the Court finds that no State vendor-payment liability exists under IDPA Rule 140.20. *Rock Island Franciscan Hospital v. State* (1987), 39 Ill. Ct. Cl. 100; *Forutan v. State* (1991), 43 Ill. Ct. Cl. 377, 379; and *Northwest Community Hospital v. State*, Nos. 93-CC-1152, 93-CC-1153 (Order filed Sept. 13, 1993).

It is hereby ordered and adjudged that Enrique David, M.D. (Provider No. 036043640) is awarded $283.50 for PC-49581 rendered on DOS March 5, 1986, to recipient Morgan (no. 87-CC-4148); and Agustin Vitualla, M.D. (Provider No. 036056239) is awarded $178 for PC-31600 rendered on DOS April 26, 1985, to recipient Peoples (no. 87-CC-2578), said awards being the maximum amounts payable under IDPA's MAP for said services; and that Respondent's summary judgment motion on the complaints and underlying causes, as to the balance of these 87 claims, is granted; judgment as to said balance is entered against the 21 Claimant physicians and in favor of Respondent as to all issues presented; and (subject only to the two above awards) these claims are dismissed.