(Nos. 85-CC-1947, 86-CC-0527 cons.—

St. Anthony Hospital Medical Center, Claimant, *v.* The State of Illinois, Respondent.

*Order filed May 16, 1991.*

*Opinion filed December 2, 1991.*

Thomas D. Luchetti, P.C., for Claimant.

Roland W. Burris, Attorney General (Steven Schmall, Assistant Attorney General, of counsel), for Respondent.

## ORDER

Sommer, J.

This cause coming to be heard on the Respondent's motion to dismiss consolidated claims, due notice having been given, and this Court being fully advised in the premises, finds that under the above claim numbers the vendor Claimant is seeking reimbursement for services provided to 30 different patient accounts. The Respondent in its motion agrees to liability and an award in the amount of $5,921.94 in regard to patients Brauer, Carter, Keller, Tillett, and Willis, identified as Nos. 6, 8, 20, 29, and 30 in the report of the Department of Public Aid. The Claimant characterizes these claims as "non-disputed." Therefore, this Court will award the Claimant $5,921.94. In regard to the remaining patient accounts, this Court finds that the more expeditious procedure will be for the parties to proceed to a hearing before the commissioner. At this time, this Court takes no position as to the merits of the remaining patient accounts, but does remind the parties that there is a great deal of case law in the Court of Claims on the issues arising from vendor claims for medical reimbursement. It is therefore ordered that the Respondent's motion to dismiss is denied and that the Claimant be paid

$5,921.24, and the above claims be returned to the commissioner for hearing in regard to the remaining patient accounts.

## OPINION

Sommer, J.

In the two captioned actions, Claimant hospital is seeking vendor payments from the Medical Assistance Program (MAP) administered by the Illinois Department of Public Aid (IDPA), for medical services rendered to 30 named patients during the period July 1981 through April 1984. Respondent reports that IDPA had authorized payment for five of the subject patient accounts in June 1984, and that a $5,921.94 State warrant had been issued to Claimant by the State Comptroller in payment of them. However, that warrant was not negotiated and has since escheated. Respondent has moved to dismiss the 25 accounts for which IDPA had not authorized payment, based upon Claimant's failure to invoice its related charges to IDPA in the manner and within the time prescribed by the Department's MAP *Handbook For Hospitals*, IDPA Rule 140.20 (89 Ill. Admin. Code sec. 140.20) and Federal Medicaid regulation (42 CFR sec. 447.45); and upon Claimant's failure to file these actions within the time period prescribed by section 439.22 of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.22) and section 11—13 of the Public Aid Code (Ill. Rev. Stat., ch. 23, par. 11—13).

The Court, being fully advised in the premises, makes the following findings.

Spenddown of Patients' Available Income And Assets. Seventeen of Claimant's 25 unresolved accounts relate to IDPA's "Spenddown" program, and to Claimant's alleged failure to comply with Spenddown requirements

within the time prescribed by IDPA Rule 140.20 and sections 447.45(b) and (d) of 42 CFR. The function of Spenddown is to ensure equitable consideration of persons having income and assets at levels greater in amount than the levels established for MAP eligibility as of right, but who may realistically be as indigent, because of the medical expenses which they incur, as other MAP-eligible recipients having lesser income or assets. The Spenddown-program enrollee and his or her medical vendors are all required to take an active part in the process of helping determine the point in time at which the enrollee's medical debts equal or exceed his or her own Spenddown obligation.

To become an eligible "recipient" in respect to medical services rendered during an enrollment period, the enrollee must be adjudicated by IDPA's local office to have incurred sufficient expenses for services rendered during or prior to that period to "meet" (equal or exceed) the enrollee's own Spenddown obligation or "amount." The enrollee is ineligible for MAP benefits unless adjudicated by the local IDPA office to have "met" his or her Spenddown amount for that period. (Topic 105 of IDPA's MAP *Handbook For Hospitals*; *Mercy Hospital v. State* (1985), 38 Ill. Ct. Cl. 204.) In its report herein, IDPA identifies three patients (Berg, Bergeron and Crossno) whose Spenddown amounts were greater than Claimant's authorized per-diem charges for their services. In such cases, the enrollee-patient remains liable, as a part of his or her Spenddown obligation, for the cost of such services. See *Mercy Hospital, supra*, at 205-06.

Medicaid Spenddown enrollees must meet their Spenddown obligation for each calendar month during which they incur expenses in order to establish MAP eligibility as to expenses incurred during the month.

When the enrollee's hospitalization spans two months, the hospital's invoice(s) for related services must document that a Spenddown-met adjudication had been made for each of the calendar months, and must reflect a TPL (third-party liability) reduction of its monthly, per-diem charge by the amount of the patient's Spenddown obligation. (*Franciscan Medical Center v. State* (1988), 40 Ill. Ct. Cl. 273.) Here, IDPA's report refers to three accounts (for patients Johann, Rumler and Somora), Claimant's invoices for which were not documented, and its charges for each month reduced, in accordance with these requirements. Claimant has not established that IDPA had received a properly prepared and documented rebill-invoice for any of these three patients (showing MAP eligibility on each date of service invoiced, per *Mercy Hospital & Medical Center v. State* (1988), 40 Ill. Ct. Cl. 269), prior to the prescribed one-year deadline for such receipt.

As to each of Claimant's 11 other Spenddown accounts, Respondent contends that Claimant had failed, within the prescribed period, to submit a properly prepared and documented, "clean claim" invoice (defined in subsection (b) of section 447.45, 42 CFR), which would establish that Spenddown adjudications had been made and the patients' payment liabilities credited against Claimant's per-diem charges. The Court finds that Claimant had not submitted clean-claim, rebill-invoices for these accounts, during the time prescribed by regulation.

Statutory Time Bar. Respondent asserts that Claimant's causes of action, as to 22 of these 25 unresolved accounts, had previously been barred from prosecution as of either February 14, 1985, or September 30, 1985, the dates on which these actions were filed with this Court. The State contends the Court lacks jurisdiction

to grant any relief as to said 22 accounts. The accounts which Respondent challenges on this ground include those seeking payment for services rendered more than 18 months prior to Claimant's commencement of the related Court action (see PAC sec. 11—13, subpar. (2)), as well as those accounts Claimant's initial DPA-form invoices for which IDPA had "refus[ed] to pay * * * in whole or in part" (*Id.*, subpar. (1)) in notices (IDPA voucher-responses or remittance advices) issued more than one year prior to the corresponding filing of said accounts as Court actions. The related services span the period from July 1981 (for patient Brien) through patient Rumler's October 1983 services, Claimant's initial invoices for these two accounts having been refused payment by IDPA notices dated January 18, 1983, and January 23, 1984, respectively.

This Court has consistently taken the position that it lacks jurisdiction to consider the merits of those vendor-payment claims which were not commenced within the time periods prescribed by section 439.22(b) of the Court of Claims Act and section 11—13 of the PAC. See *Kim v. State* (1991), 43 Ill. Ct. Cl. 286, and prior decisions therein cited.

Having reviewed the facts (dates of Claimant's services and of IDPA's payment-refusal notices responding to Claimant's initial invoices of charges for said services) as outlined in Claimant's complaints and IDPA's report herein, the Court concludes that each of Claimant's causes as to said 22 claims had in fact been barred by statute, prior to Claimant's filing of the related actions as discussed above. Accordingly, the Court has no authority to award Claimant any relief as to said claims.

Failure to Comply with MAP Invoicing Requirements. Of the three accounts not barred by statute, two (Eberley and Harris) involve services to AMI (Aid to the Medically Indigent, or PAC Article VII) Spenddown patients. In each instance, Claimant had invoiced its charges to IDPA without attaching a split billing transmittal document, DPA form 2432 (to be completed by the local office as proof of Spenddown adjudication), and without reporting a TPL credit, on the face of the invoice, the amount of the patient's Spenddown obligation. IDPA had refused payment because of these deficiencies. In neither case does Claimant allege that it had submitted a properly-prepared and documented rebill-invoice within the one-year period as prescribed by IDPA Rule 140.20. In the absence of this required Spenddown information, Claimant's invoices contained no indication that the patients' Spenddown status may have been adjudicated, or that the amounts being charged for vendor-payments should be reduced by the amounts of the patients' payment obligations.

Claimant's initial invoice of charges for patient Allen (the third non-barred account) had been prepared—and received by IDPA—more than six months following the patient's April 6, 1984, discharge from Claimant's facility. Subsection (c) of IDPA Rule 140.20 (89 Ill. Adm. Code (1985), sec. 140.20, formerly IDPA Rule 4.015; included in Topic 141 of IDPA's vendor *Handbooks*) required that "[t]o be eligible for payment consideration," vendors' invoices must be received by the Department within six months following the date(s) of service, except in certain situations not here relevant. Further, subsection (e) of the rule relieved the State of payment liability as to services which had not been timely invoiced; and this Court has denied vendor-payment claims in such cases. (See *Treister v. State*

(1989), 42 Ill. Ct. Cl. 185, and decisions therein cited.) We find no liability to exist here for patient Allen's services.

The Court on May 16, 1991, awarded Claimant St. Anthony Hospital Medical Center the sum of $5,921.94 on the five accounts previously approved by IDPA, and the Claimant has no objection to the entry of this order and dismissal of this claim.

It is hereby ordered and adjudged that Respondent's motion to dismiss Claimant's claims based upon the remaining 25 accounts here presented be and is hereby granted. This claim is dismissed.